(*) J. C. GILMORE *versus* PATTERSON *&* al.

In a Bill in Equity, the adjudication of the Judge at the *Nisi Prius* hearing as to the facts of the case, is conclusive.

So far as a defendant's answer is responsive to the bill, or explanatory of the responsive matter in the bill, it is evidence. But when a new and independent fact, not called for by the bill, is set up, it must be established by proof.

It is a general rule that the answer of one defendant is not evidence for his co-defendant.

It is a general rule of evidence that the admissions of one co-partner, with reference to the legitimate business of the co-partnership, are deemed to be the admissions of each and all of its members.

Such admissions are not the less evidence, because found in an answer to the bill under consideration of the Court.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

IN EQUITY.

The case was heard on bill, answer and proof.

The Judge's report of the case is substantially as follows : —

The bill was instituted by John C. Gilmore against Martin Gilmore, Robert Patterson and Phineas Pendleton, jr. The several defendants have duly filed their answers. Since filing his answer, and since the taking of the proof, Martin Gilmore has deceased, dying at sea, insolvent, (leaving no estate,) and no administrator has been appointed upon his estate, and he is not represented in the cause. Phineas Pendleton, jr. in no way contests the plaintiff's claim, but submits himself to the order of the Court. The controversey, therefore, is entirely between John C. Gilmore and Robert Patterson.

In January, 1846, John C. Gilmore and Martin Gilmore entered into partnership at Point Pleasant, in Virginia, to carry on mercantile and shipbuilding business. The business was continued till Dec. 1, 1848, when the plaintiff sold out his interest in the goods in their store to Martin Gilmore, but the partnership was continued by agreement, for the purpose of disposing of the partnership property then on hand, and paying the debts and settling the affairs of the firm.

On April 1, 1848, the co-partnership owned a brig of the value of $8000, or thereabouts ; they then agreed that Martin Gilmore should take the brig to Boston to be sold for the benefit of the firm, which he did, and there sold her to the defendant Pendleton, for $8250, taking his notes running to said Martin, instead of the firm to whom the brig belonged. These notes, or a portion of them, remained in the hands and under the control of Martin till Oct. 1849, when he became embarrassed, his property was attached, and he was arrested at Point Pleasant, at the suits of creditors of the firm resident there.

The firm was then, and before, insolvent, and still owes large amounts, and the notes given for the brig are needed for

the payment of the just debts of the firm, and this bill is brought by the plaintiff to obtain them for that purpose.

On the 15th of Oct. 1849, without the knowledge or consent of the plaintiff, Martin Gilmore inclosed two of the notes, each to the amount of $2666, payable in two and three years, in a letter, and sent them to the defendant Patterson, at Belfast, in this State. The letter, inclosing the notes, is called for in the bill, and the answer alleges it to be of the following tenor.

" Dear Sir : — Inclosed you will find two notes against Phineas Pendleton, jr., which I assign to you and some other creditors in your parts, as surety for what I owe you ; but I do not want you to take any steps to collect them till I see you. If it is so that you can come and see me, I shall like to have you, as I am in jail and cannot go to see you.

" Yours, &c., Martin Gilmore."

Shortly after the receipt of that letter, Patterson proceeded to Point Pleasant, where he arrived on Nov. 5, 1849 ; and he states in his answer *that*, on his arrival, and on the same day, in the afternoon or evening, he saw Martin in jail, relating to his claims against the firm ; *that* they computed the interest, and found the whole amount, principal and interest, due him from the firm to be $3900 ; *that*, by agreement with Martin, he gave up all claims against the firm and discharged them, and surrendered up their notes, the dates and amount of which are specifically set forth in the answer ; and *that*, in consideration therefor, Martin transferred said two notes to Patterson, under an arrangement specified in an instrument in the hand writing of Patterson, but signed by Martin, as follows :—

" Point Pleasant, Nov. 5, 1849. Received of Martin Gilmore two notes, by letter dated October 15, 1849, against R. Pendleton for $2666,00. Said notes dated Boston, June 17, 1848, and I have this day given up to said Gilmore, M. & J. C. Gilmore's notes and interest on said notes to the amount of three thousand, nine hundred dollars.

" Now it is agreed by said Gilmore that said Patterson may get said notes cashed at the best rates he can, and apply the

funds to the payment of the notes given up and interest since, and a reasonable pay for all his travel and expense in the same. And the assignment as security on said notes is void, and his blank indorsement on said note is to be good against him, waiving demand and notice in any way, and if said notes shall overpay the notes given up, said Patterson is to pay the balance to some one of M. & J. C. Gilmore's creditors, as Gilmore shall direct. The two notes against Pendleton are payable in two and three years with interest from date. "Martin Gilmore."

The notes were produced by Patterson at the hearing, and had the indorsement of Martin Gilmore thereon.

Though Patterson remained some days at Point Pleasant, it does not appear that he had any interview with the plaintiff there.

No further proof was offered of the time when the indorsements on the notes were made, unless the answers be such proof.

No evidence was introduced of the claims of Patterson against the firm of J. C. & M. Gilmore, or of the transmission of the notes, or of the settlement made in jail, except his answer and the answer of Martin Gilmore, which Patterson claims to use as evidence in his favor.

The bill charges that Martin delivered said notes to Patterson with the fraudulent design of secreting them from plaintiff and from the creditors of the firm, and of fraudulently appropriating them to his own use ; and that Patterson knew of such design and received them in aid of its execution, all which is denied by the answers both of Patterson and Martin, which concur in every material particular. Plaintiff introduced much evidence of a circumstantial nature to show the fraud on the part of Martin, and notice to and coöperation on the part of Patterson, but on carefully considering the evidence, I do not find sufficient evidence of fraud and collusion on the part of Patterson to overcome his answer.

The Judge appointed a receiver, to whom the notes against Patterson should be delivered.

Upon the foregoing report, the Court is to render such decree as the rights of the parties may require.

*Rowe & Bartlett,* for the plaintiff.

*J. S. Abbott,* for the defendants.

RICE, J. — This case comes before us on report of the Judge, who heard the parties in Penobscot county. The gravamen in the plaintiff's bill, is, that Martin Gilmore, who is one of the defendants, and a co-partner with the plaintiff, having possession of the notes against Pendleton, described in the bill, which notes were the property of the firm of M. & J. C. Gilmore, transferred and delivered them to Patterson, for the purpose of deriving benefit therefrom, personally, and with the further purpose and design of defrauding the plaintiff and the creditors of the firm ; and that Patterson had knowledge of these facts, and of the fraudulent designs of Martin, before he obtained possession of the notes, and thereby became a participator in the alleged fraud.

The defendant Pendleton admits in his answer, that he gave the notes described in the bill, and affirms that he has at all times been, and now is ready and willing to pay the same according to their tenor, to any party entitled to receive payment therefor, and prays the direction of the Court. He is without fault.

Martin Gilmore has deceased, insolvent, since his answer was filed, and the plaintiff desires no further proceedings against him or his representatives.

Patterson and Martin Gilmore in their several answers, do not deny, but admit the existence of the co-partnership between plaintiff and Martin, as set forth in the bill ; and Martin admits that the notes were the property of the firm, which fact is not contested by Patterson. But both these defendants expressly deny all fraud in the transfer of the notes, or that they were transferred or delivered to Patterson for the private benefit of Martin.

At the hearing, this plaintiff introduced much circumstantial evidence to show fraud on the part of Martin, and notice

and coöperation on the part of Patterson. But the Judge did not find sufficient evidence of fraud and collusion on the part of Patterson to overcome his answer. This being a question of fact, the finding of the Judge is conclusive and the allegation of fraud therefore repelled.

From the answer of Patterson it satisfactorily appears, that from the time the notes came into his hands in the letter dated Oct. 15, 1849, until Nov. 5th, following, they were held as collateral security for the benefit of himself and certain other creditors of M. & J. C. Gilmore, though a literal construction of the language of the letter inclosing the notes would seem to restrict their application to indebtedness from Martin alone. This however is not material, because Patterson admits that that arrangement, whatever it may have been, was rescinded and a new arrangement made on the 5th of November, 1849. On that day Patterson states that he saw Martin Gilmore, who was then incarcerated in prison in Virginia, relative to his claim against the firm; that they computed the interest and found the whole amount of principal and interest then due him from the firm, to be $3900, and that by agreement he gave up to Martin all of said claims against the firm, and fully discharged the same. In consideration of which, Martin, in behalf of the firm, transferred and delivered to him said two notes, and as part of the same transaction agreed that he might, if he saw fit, get them cashed, and deduct from the proceeds said $3900, and a reasonable sum as compensation for his trouble and expenses, Patterson at the same time agreeing to pay over the surplus, if any, to the creditors of the firm, as Martin might direct. This contract was not in writing, but at that time Martin gave Patterson the memorandum in writing, recited in his answer.

It is now contended by the defendant Patterson, that his answer should be received as evidence, not only of the manner in which the notes came into his hands, but also as to the amount of the indebtedness of the firm to him.

So far as the defendant's answer is responsive to the bill, or necessarily connected with, or explanatory of the responsive

matter in the bill, it is evidence. But when a new and independent fact, not called for by the bill, is set up, such fact must be established by proof. The extent of the indebtedness of the firm to Patterson is of this character and must therefore be proved.

As evidence upon this point, Patterson offers the answer of his co-defendant Martin Gilmore. It is a general rule, that the answer of one defendant is not evidence for his co-defendant.

But it is also a general rule of evidence that the admissions of one co-partner, with reference to the legitimate business of the partnership, are deemed to be the admission of each and all its members. The existence of the co-partnership between Martin Gilmore and the plaintiff having been alleged in the bill, and admitted in the answers of the defendants, and the charge of fraud having been successfully repelled, the admissions of Martin, touching the indebtedness of the firm to Patterson, are admitted as evidence for Patterson, and may be used by him in establishing his claim against the firm, whether those admissions are found in the answer of Martin or in any other paper signed by him. They are admitted, however, as the admissions of a co-partner, not as the answer of a co-defendant, and as such must receive the consideration to which they are justly entitled under the circumstances under which they were made.

The rights of the parties stand thus ; — Patterson has an interest in the notes, or the proceeds thereof, to the extent of his just claims against the firm, which were surrendered by him to Martin, and also for such reasonable expenses as have been incurred under the agreement made with Martin at the time he surrendered his claims, and the surplus must be paid over to the plaintiff.

To determine the amount of Patterson's interest in the notes or their proceeds, a master must be appointed, who is authorized to hear testimony and report the amount which is justly due to Patterson from the firm of M. & J. C. Gil-

more, and for this purpose the master is also authorized to ex-
amine the parties upon oath.

The decree of the Court below, appointing a receiver, is
affirmed, and said receiver is authorized to collect the notes
and hold the proceeds to be disposed of, according to the prin-
ciples above stated, under the order of Court, after the coming
in of the master's report.

The defendant Pendleton, not appearing to have resist-
ed any of the just demands of the plaintiff, is entitled to his
costs.

SHEPLEY, C. J., and TENNEY and HATHAWAY, J. J., con-
curred.